1  **GEORGE BEAN LAW**
   George H. Bean (SBN 306016)
2  *george@georgebeanlaw.com*
   340 E. 1st Street, #1127
3  Tustin, CA 92781
   Telephone: (714) 904-9338
4
   Attorney for Plaintiff, Brendan Potyondy
5

6

7

8              UNITED STATES DISTRICT COURT

9             CALIFORNIA CENTRAL DISTRICT

10

11  BRENDAN POTYONDY, an            CASE NO.
    individual,
12                                      **COMPLAINT FOR:**
              Plaintiff,
13  v.                              1. **RETALIATION IN VIOLATION**
                                       **OF SARBANES OXLEY ACT**
14                                  2. **RETALIATION IN VIOLATION**
    PACIFIC COAST ENERGY              **OF CALIFORNIA LABOR CODE**
15  COMPANY, LP, a Delaware          **SECTION 1102.5**
    limited partnership, and DOES 1 3. **RETALATION IN VIOLATION OF**
16  through 25, inclusive,            **CALIFORNIA LABOR CODE**
                                      **SECTION 98.6**
17            Defendants.          4. **WRONGFUL TERMINATION IN**
                                      **VIOLATION OF PUBLIC POLICY**
18

19

20        Comes now Plaintiff Brendan Potyondy who states, alleges, and prays for
    relief as follows:
21

COMPLAINT FOR DAMAGES

## I. PARTIES

1.    PLAINTIFF BRENDAN POTYONDY ("Plaintiff" or "Potyondy") is, and at all times relevant hereto, was an individual residing in and who performed employee services for Defendants in the County of Santa Barbara, California.

2.    DEFENDANT PACIFIC COAST ENERGY COMPANY, LP ("PCEC") is, and at all times relevant hereto, was a Delaware limited partnership, registered in the State of California, authorized to do business in the State of California with its principal place of business in the County of Santa Barbara.

3.    Plaintiff does not presently know the true names and capacities of defendants named as DOES 1 THROUGH 25, INCLUSIVE. Plaintiff will amend this Complaint setting forth the true names and capacities of these defendants when they are ascertained. Plaintiff is informed and believes and, on that basis alleges, that each of the fictitious defendants has participated in the acts alleged in this Complaint to have been done by the named defendants.

4.    Unless otherwise indicated, each defendant herein sued is the agent, co-conspirator, joint-venturer, partner, and/or employee of every other defendant and, as alleged, has been acting within the course and scope of said agency, conspiracy, joint venture, partnership, employment and/or joint-employment, with the knowledge and/or consent of their co-defendants, and each of them. Plaintiff is informed and believes that each defendant has authorized and/or ratified the wrongful activities of each of the remaining co-defendants.

COMPLAINT FOR DAMAGES

**II. JURISDICTION AND VENUE**

5.    This Court has jurisdiction over this action pursuant to 28 U.S.C § 1331 and 18 U.S.C. § 1514A(b)(1)(B).

6.    Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because Defendant partnership resides in this District by having its principal place of business in Santa Barbara County.

**III.      NATURE OF THE CASE**

7.    This is an action brought pursuant to U.S.C. Title 18 § 1514A, known as the Sarbanes-Oxley Act of 2002, California *Labor Code* §§ 1102.5, and 98.6; all of which forbid retaliation against an employee who engages in whistle blowing actions.

8.    Plaintiff seeks damages for back wages, front wages, lost benefits, perquisites, penalties, reinstatement, emotional distress damages, exemplary damages, attorney's fees, costs and interest on the unpaid wages.

**IV.      STATEMENT OF FACTS**

9.    Mr. Potyondy was hired by PCEC on or about February 14, 2022, as a Reserves Manager. His duties were primarily to evaluate and estimate the value of PCEC's oil and gas reserves.

10.    After observing that the operations at PCEC were being run in a suspect manner in 2023, Mr. Potyondy began to take detailed contemporaneous notes. From

COMPLAINT FOR DAMAGES

1   these notes, Mr. Potyondy made complaints to the Securities and Exchange
2   Commission about the unlawful activities of PCEC.

3          11.    He discovered PCEC's theft on August 15, 2023, and filed his first
4   complaint with the SEC on August 28, 2023, and filed a supplement with more
5   documents and backup materials the next day, August 29, 2023.

6          12.    His complaints to the SEC detailed that PCEC intentionally devalued
7   Pacific Coast Oil Trust ("PCOT") for purchase with examples and documents that
8   showed PCEC charging PCOT capital and expense dollars for expenses that did not
9   benefit PCOT, but that benefited other companies under the PCEC umbrella. PCEC
10  is the Trustor and founder of the PCOT, a publicly traded company, with a class of
11  securities registered under section 12 of the Securities and Exchange Act of 1935
12  and is required to file reports under section 15(d) of the Securities and Exchange Act
13  of 1934.

14         13.    The complaints allege issues with PCEC's fiduciary duty to PCOT,
15  including the purposeful provision of false data to the PCOT Trustee and auditors.

16         14.    The complaints further alleged that PCEC was altering reserves classes
17  and valuations, outside of normal oil and gas fair market valuation techniques.

18         15.    Mr. Potyondy also disclosed to the SEC that PCEC diverted dividends
19  payable to PCOT and its investors by allotting the oil profits to future asset-
20  retirement-obligations (ARO). This was with the intention of starving PCOT of

21

COMPLAINT FOR DAMAGES

1  dividend distributions to activate a clause whereby PCOT would be wound down,

2  eviscerating the value of the investments made by innocent Unit Holders.

3      16.    Mr. Potyondy further disclosed to the SEC that Klaus Hasbo, PCEC's

4  CEO, instigated a new questionable tariff model and said to Mr. Potyondy, "between

5  you and me, we don't want the value too high since we are going to buy the Trust."

6  It was clear that PCEC was purposely devaluing PCOT so that they could scoop it

7  up at bargain basement prices.

8      17.    Philip Brown, PCEC's COO and Potyondy's supervisor, intimated that

9  incurring the tariff was favorable and that they "want PCEC to pay the tariff because

10 PCOT will pay a large portion of it."

11     18.    Mr. Potyondy also disclosed to the SEC that PCEC had parked over

12 $31 million for AROs that should have otherwise been paid out as dividends to the

13 investors.

14     19.    In the same SEC complaint, Mr. Potyondy disclosed that Patrick Glenn,

15 PCEC's Vice President, told him that "sometimes things were made up." This was

16 in reference to well counts that an auditor had requested. It appeared that Mr. Glenn

17 was simply trying to confuse PCOT's auditors.

18     20.    Mr. Potyondy disclosed to the SEC that Mr. Hasbo repeatedly directed

19 him to prioritize Diatomite production over Field production which both reduced

20 revenue for and devalued PCOT.

21

COMPLAINT FOR DAMAGES

21.     Mr. Potyondy disclosed questionable expense and capital allocations such as: (1) PCOT may have been charged for expensive water supply that benefited other entities; (2) PCOT may have been charged for insurance that benefitted other entities; (3) PCOT may have been charged for labor costs that benefitted other entities; (4) PCOT may have been charged for chemicals that benefitted other entities; (5) PCOT may have been paying for employees who worked for other entities; and (6) PCOT may have paid for a pipeline that benefitted other entities. The overcharged expenses to PCOT lowered PCOT's revenues and value, so that PCEC could benefit from the expenditures but still devalue PCOT for future purchase by PCEC.

22.     Mr. Potyondy also disclosed potential fiduciary duties breaches to the SEC. The issues were: (1) Patrick Glenn was making decisions to the detriment of PCOT and the advantage of PCEC; (2) PCEC made strategic acquisitions, such as adjacent assets, for themselves and affiliated entities, putting PCOT at the mercy of others and negatively affecting the value of PCOT; and (3) PCEC concealed offers for purchasing of one of its properties, which could have benefitted PCOT greatly, but the concealment of which benefitted PCEC greatly.

23.     Mr. Potyondy also disclosed concerns with a new ARO report ordered by PCOT's auditor. These concerns include: (1) Klaus Hasbo rushed the ARO estimates performed by a third party, Cornerstone, to push through the sale of PCOT to PCEC and Patrick Glenn directed Cornerstone to leave out some environmental

COMPLAINT FOR DAMAGES

cleanup because it would cause the ARO estimation process to take longer and would increase the estimated ARO costs substantially; (2) Patrick Glenn asked Cornerstone to ignore an expensive cost, brush and tree removal, replanting and 5 years of monitoring, to falsely deflate the estimate; (3) Patrick Glenn asked Cornerstone to ignore costs for plugging wells to current regulatory requirements; (4) Patrick Glenn told Cornerstone to remove language from their draft report about regulatory requirements and the number of days estimated for some well abandonments. Mr. Glenn wanted to hide the fact that some abandonments could take up to 20 years. In sum, PCEC was aware that the data provided by its management was materially misstated.

24.    Mr. Potyondy also disclosed to the SEC that PCEC alters its reserves reports. He disclosed that: (1) PCEC overvalues its assets. One such method is to classify an asset as a Proved Reserve, a Probable Reserve, or a Contingent Resources. Each has a different valuation. PCEC classified Contingent Resources as Probable Reserves, resulting in an extreme overvaluation; (2) PCEC manipulated the value of well lives and changed the discounted ARO values by too much; (3) PCEC misled auditors with regard to the application of salvage, applying it to facilities and not wells; (4) PCEC did not assign ARO to undeveloped drilling locations, understating the total ARO; (5) Patrick Glenn admitted that many Contingent Resources, such as wells that would likely not be approved by County regulators, were classified as Probable Reserves, causing manipulation of values.

COMPLAINT FOR DAMAGES

Patrick Glenn admitted to Mr. Potyondy that he was intentionally concealing this from auditors; and (6) Mr. Potyondy was told not to make impairment runs when his first draft revealed unflattering information that PCEC wanted to conceal. Mr. Potyondy also disclosed to the SEC that several other mistakes were made with regards to reserves.

25.    Mr. Potyondy concluded his complaint to the SEC by summarizing that PCEC tried to dissolve PCOT in order to purchase it, and worked to devalue PCOT so that they could purchase it for less than market value. PCEC intentionally provided erroneous and manipulated information to PCOT and its auditors.

26.    Mr. Potyondy supplemented his SEC complaint the following day, August 29, 2023, with additional documentation. This second transmission again concluded that PCEC charged PCOT for many things that benefitted other entities and negatively affected PCOT.

27.    Very few people had access to the information that Mr. Potyondy reported to the SEC, so Defendants naturally suspected him as the whistleblower. Further, the information reported to the SEC indicated Mr. Potyondy's assessments of illegal acts that he had shared within the company in numerous prior circumstances.

28.    On October 24, 2023, Mr. Potyondy filed a complaint with CalOSHA, disclosing that PCEC, through a related entity, was putting an excess amount of

COMPLAINT FOR DAMAGES

1    steam into a reservoir, known as the Careaga Lease, which elevated the pressure and

2    posed a threat to any people working in the area.

3        29.    Mr. Potyondy also informed CalOSHA that PCEC installed an

4    unpermitted soft water line from their operation on Orcutt Hill to the Careaga Lease.

5        30.    PCEC's mismanagement caused steam and oil to express in or near

6    existing wells.

7        31.    On November 6, 2023, Mr. Potyondy emailed the California Geologic

8    Energy Management Division ("CalGEM") to disclose to them that PCEC, through

9    a related entity, was illegally transporting produced water for disposal without

10    proper permissions. Mr. Potyondy emailed this disclosure to Jon Iverson, the local

11    CalGEM engineer and local office manager in Orcutt, California.

12        32.    Very few people knew of this, so PCEC certainly would have suspected

13    Mr. Potyondy as the whistleblower.

14        33.    The next day, Mr. Potyondy overheard a phone call between Patrick

15    Glenn, Philip Brown, and Jon Iverson (presumably) from CalGEM regarding his

16    complaint. Shortly thereafter, Mr. Glenn sent critical emails to Mr. Potyondy, one

17    unjustly criticizing him and a second informing him that he would not be working

18    Reserves on a new asset under the PCEC umbrella even though Mr. Potyondy was

19    the Reserves Manager.

20        34.    On November 7, 2023, Patrick Glenn was in Mr. Potyondy's office and

21    Mr. Potyondy mentioned a well that had elevated pressure and temperature, as he

COMPLAINT FOR DAMAGES

had disclosed to CalOSHA, at which point Mr. Glenn realized the connection between the whistleblowing conduct and what Mr. Potyondy was saying.

35.    Hasbo, Glenn, and Brown treated Mr. Potyondy differently after his whistle blowing reports, isolating him from information and becoming noticeably unfriendly to him, quite apart from their prior behavior.

36.    On November 9, 2023, Mr. Potyondy disclosed to CalGEM that PCEC had submitted incorrect production figures and knowingly did not fix them, in violation of regulations.

37.    On November 14, 2023, Mr. Potyondy disclosed to the California Department of Fish and Wildlife ("CDFW") that PCEC, through a related entity, had an oil spill on the Careaga Lease that polluted a blue-line creek that they did not report. He also informed them of the elevated reservoir pressure that he had told CalOSHA about previously.

38.    Again, very few people knew about this, making PCEC likely suspicious of Mr. Potyondy.

39.    Mr. Potyondy also disclosed to CDFW that a PCEC employee had spilled 30-40 barrels of oil when a truck operator fell asleep while filling his truck.

40.    Mr. Potyondy disclosed to CDFW that the East Newlove pipeline burst as a result of being in extremely poor condition.

COMPLAINT FOR DAMAGES

41.     An officer from CDFW, who turned out to be the person Mr. Potyondy had made his complaint to, made an unannounced visit to the PCEC facility on December 5, 2023, in response to Mr. Potyondy's complaints.

42.     PCEC became aware of Mr. Potyondy's whistle blowing activities and retaliated against him for disclosing violations of law to governmental agencies. They reduced his visibility at PCEC and added management levels to his reporting structure.

43.     Other employees, known to go along with PCEC's shenanigans, were promoted past Mr. Potyondy, as they edged him out.

44.     Mr. Potyondy was the only employee, other than the perpetrators, who had access to the combination of information that was reported, so PCEC could not have reasonably suspected anyone but him as being the whistleblower.

45.     On December 12, 2023, Mr. Potyondy emailed copies of his complaints to a local attorney.

46.     On December 13, 2023, Philip Brown called Mr. Potyondy into the conference room with Mr. Brown and Patrick Glenn. They told him that they were terminating his employment effective January.

47.     Defendants at this point greatly reduced Mr. Potyondy's access to company information and terminated him effective at the end of his jury duty which was completed on January 19, 2024.

COMPLAINT FOR DAMAGES

**FIRST CAUSE OF ACTION**

**Retaliation in Violation of Sarbanes Oxley**

**18 U.S.C. § 1514A**

48.    Plaintiff realleges and incorporates by this reference all of the allegations in the preceding paragraphs.

49.    PCEC is the Trustor and founder of the PCOT, a publicly traded company, with a class of securities registered under section 12 of the Securities and Exchange Act of 1935 and is required to file reports under section 15(d) of the Securities and Exchange Act of 1934.

50.    PCOT is a passive investment vehicle owning the right to the profits from certain oilfields in California. PCOT Trust Units traded on the New York Stock Exchange under the symbol ROYT, and trades under PINX as ROYTL.

51.    A Trustee would ordinarily manage a trust, however the Trustee of PCOT does not have the staff to do so. Rather, the Trustee pays PCEC approximately $1.3 million a year to provide operational and administrative services.

52.    This makes PCEC an employee, a contractor, a subcontractor, or an agent of PCOT, thus subjecting PCEC to 18 U.S.C. § 1514A. PCEC is intimately involved in all of PCOT's affairs, also making PCEC an affiliate or subsidiary.

53.    Mr. Potyondy's complaints provide evidence that Defendants engaged in frauds and swindles, as defined in 18 U.S.C. § 1341, fraud by wire as defined in

COMPLAINT FOR DAMAGES

1  18 U.S.C. § 1343, bank fraud, as defined in 18 U.S.C. § 1344, and securities fraud,

2  as defined in 18 U.S.C. § 1348.

3      54.    Mr. Potyondy is therefore a protected whistleblower under

4  18 U.S.C. § 14A, *et seq*.

5      55.    Mr. Potyondy made the above referenced disclosures to the Securities

6  and Exchange Commission ("SEC") on August of 2023.

7      56.    Defendants immediately started to treat him differently after his

8  complaint. He was isolated from company information, taken off projects, and

9  removed from communications that were essential for his job. PCEC management

10  also began to treat him poorly, on a personal level.

11      57.    Mr. Potyondy had an extremely uncomfortable interaction with Mr.

12  Hasbo on September 8, 2023. Mr. Hasbo was unhappy and did not shake hands like

13  he had always done before. It was clear that he had found out about the SEC

14  complaint and suspected that Mr. Potyondy filed it. He tried to extract information

15  from Mr. Potyondy but was hesitant to ask directly.

16      58.    That same day, PCEC put an advertisement on Glassdoor for Mr.

17  Potyondy's position. Further, Mr. Potyondy was excluded from a meeting that he

18  would ordinarily attend and that his position would dictate he be there.

19      59.    The Defendants reduced Mr. Potyondy's visibility into the company.

20  On December 12, 2023, Mr. Potyondy emailed a copy of his complaints to a local

21

COMPLAINT FOR DAMAGES

1  attorney. The very next morning, December 13, 2023, Philip Brown called him into

2  the conference room and terminated his employment with PCEC, effective January.

3        60.    PCEC greatly reduced Mr. Potyondy's access after December 13, 2023,

4  only keeping him at PCEC while he fulfilled jury duty.

5        61.    Mr. Potyondy will be seeking all relief necessary to be made whole

6  including but not limited to reinstatement with the same seniority status, back pay,

7  with interest, special damages, costs and attorney's fees.

8  **<u>SECOND CAUSE OF ACTION</u>**

9  **Retaliation in Violation of California Law**

10  **California Labor Code § 1102.5**

11        62.    Plaintiff realleges and incorporates by this reference all of the

12  allegations in the preceding paragraphs.

13        63.    California *Labor Code* § 1102.5(b) provides:

14        "An employer, or any person acting on behalf of the employer, shall

15        not retaliate against an employee for disclosing information, or

16        because the employer believes that the employee disclosed or may

17        disclose information, to a government or law enforcement agency,

18        to a person with authority over the employee or another employee

19        who has the authority to investigate, discover, or correct the

20        violation or noncompliance, or for providing information to, or

21        testifying before, any public body conducting an investigation,

COMPLAINT FOR DAMAGES

hearing, or inquiry, if the employee has reasonable cause to believe

that the information discloses a violation of state or federal statute,

or a violation of or noncompliance with a local, state, or federal rule

or regulation, regardless of whether disclosing the information is

part of the employee's job duties."

64.    Mr. Potyondy disclosed violations of law to the SEC, CalOSHA, CalGEM, and the CDFW, as detailed above.

65.    PCEC retaliated against Mr. Potyondy by reducing his role, giving his appropriate job tasks to others, isolating him, reducing the company visibility necessary to do his job, removing him from communications and meetings necessary for his job, treating him shabbily, and eventually terminating his employment in response to his disclosures made to various government agencies.

66.    On December 13, 2023, Defendants terminated Mr. Potyondy's employment in retaliation for his disclosures of unlawful conduct to governmental agencies, namely the SEC, CalOSHA, CalGEM, and the CDFW.

67.    PCEC is liable for past and future earnings and benefits; as well as noneconomic damages such a physical pain and mental suffering. Potyondy will also be seeking attorney's fees and costs under California *Labor Code* § 1102.5(j) and exemplary damages pursuant to California *Civil Code* § 3294.

/ / /

/ / /

COMPLAINT FOR DAMAGES

1

## **THIRD CAUSE OF ACTION**

2

### **Retaliation in Violation of California Law**

3

### **California Labor Code § 98.6**

4        68.     Plaintiff realleges and incorporates by this reference all of the

5    allegations in the preceding paragraphs.

6        69.     California *Labor Code* § 98.6(a) provides:

7        A person shall not discharge an employee or in any manner

8        discriminate, retaliate, or take any adverse action against any employee

9        or applicant for employment because the employee or applicant

10       engaged in any conduct delineated in this chapter, including the conduct

11       described in subdivision (k) of Section 96, and Chapter 5 (commencing

12       with Section 1101) of Part 3 of Division 2, or because the employee or

13       applicant for employment has filed a bona fide complaint or claim or

14       instituted or caused to be instituted any proceeding under or relating to

15       their rights that are under the jurisdiction of the Labor Commissioner,

16       made a written or oral complaint that they are owed unpaid wages, or

17       because the employee has initiated any action or notice pursuant to

18       Section 2699, or has testified or is about to testify in a proceeding

19       pursuant to that section, or because of the exercise by the employee or

20       applicant for employment on behalf of themselves or others of any

21       rights afforded them.

COMPLAINT FOR DAMAGES

70.    Mr. Potyondy disclosed violations of law to various governmental agencies, a protected activity under this part, pursuant to its inclusion of Chapter 5 (commencing with Section 1101) of Part 3 of Division 2.

71.    After learning of Mr. Potyondy's whistleblowing actions, Defendants retaliated against him in numerous ways, and terminated his employment within 90 days. This creates a rebuttable presumption in favor of Mr. Potyondy's claim, pursuant to California *Labor Code* § 98.6 (b)(1).

72.    Mr. Potyondy is entitled to reinstatement and reimbursement for lost wages and work benefits caused by PCEC's conduct.

## FOURTH CAUSE OF ACTION

### Wrongful Termination in Violation of Public Policy

73.    Plaintiff realleges and incorporates by this reference all of the allegations in the preceding paragraphs.

74.    "[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167, 170.

75.    "The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a

COMPLAINT FOR DAMAGES

1    violation of public policy, and (4) the discharge caused the plaintiff harm." <u>Yau v.</u>

2    <u>Allen</u> (2014) 229 Cal.App.4th 144, 154.

3        76.    On December 13, 2023, Defendants terminated Mr. Potyondy's

4    employment in retaliation for his disclosures of unlawful conduct to governmental

5    agencies, namely the SEC, CalOSHA, CalGEM, and the CDFW.

6        77.    Defendants' motivation for termination was retaliatory and in violation

7    of numerous well-established public policies, including Sarbanes-Oxley, California

8    *Labor Code* §§ 1102.5 and 98.6.

9        78.    PCEC's unlawful termination caused harm to Mr. Potyondy who will

10   seek past and future lost earnings, past and future lost benefits, emotional distress

11   damages, punitive damages, and attorney's fees and costs.

12   **<u>PRAYER FOR RELIEF</u>**

13   WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

14       1.    For an award to Plaintiff of past and future wages, according to proof;

15       2.    For an award to Plaintiff of past and future benefits, according to proof;

16       3.    For an award to Plaintiff of interest on past wages, and benefits,

17             according to proof;

18       4.    Reinstatement with the same position, salary, and seniority;

19       5.    For an award to Plaintiff of $10,000 pursuant to California *Labor*

20             *Code* § 98.6(b)(2);

21       6.    For an award to Plaintiff of $10,000 pursuant to California *Labor*

COMPLAINT FOR DAMAGES

1    *Code* § 1102.5(f)(1);

2    7.    For an award to Plaintiff for emotional distress damages, according to

3          proof;

4    8.    For an award to Plaintiff for exemplary damages, according to proof;

5    9.    For attorney's fees and costs of this action under 18 U.S.C.

6          § 1514A(c)(2)(C);

7    10.   For attorney's fees and costs pursuant to California *Labor Code*

8          § 1102.5(j);

9    11.   For attorney's fees and costs pursuant to any other applicable regulation

10         or law;

11   12.   For prejudgment interest and post judgment interest as allowed by law;

12         and

13   13.   Any such other and further relief as this Court may deem appropriate

14         and just.

15   RESPECTFULLY SUBMITTED.

16

17   Date: October 23, 2024          **GEORGE BEAN LAW**

18

19                                   _____

20                                   George H. Bean, Attorney for
                                     Plaintiff, Brendan Potyondy

21

COMPLAINT FOR DAMAGES

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands trial of his claims by a jury for this action.

Date: October 23, 2024                    **GEORGE BEAN LAW**

_____
George H. Bean, Attorney for
Plaintiff, Brendan Potyondy

COMPLAINT FOR DAMAGES